UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RICHARD A. SEATON JR. #595392 | CIVIL ACTION NO. 17-1556 SEC P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JERRY GOODWIN | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Now before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by Petitioner Richard A. Seaton, Jr. ("Petitioner"). [Record Document 1]. The only remaining issue in this case is whether the State's failure to produce a 911 audio recording ("the 911 recording") constituted a *Brady*[1] violation. [Record Document 20, p. 1]. For the reasons discussed below, the instant petition [Record Document 1] is **DENIED** and **DISMISSED WITH PREJUDICE**. Additionally, Petitioner's motion for a certificate of appealability [Record Document 19] is **GRANTED**.

## BACKGROUND

Petitioner attacks his 2012 convictions for forcible rape, in violation of Louisiana Revised Statute § 14:42.1(A)(1), and abuse of office, in violation of Louisiana Revised Statute § 14.134.3, and subsequent 15-year sentence imposed thereon by the 1st Judicial District Court, Caddo Parish. *See State v. Seaton*, 47, 741 (La. App. 2 Cir. 4/10/13); 112 So. 3d 1011, 1013, *writ denied*, 2013-1056 (La. 11/15/13); 125 So. 3d 1102. Petitioner contests his convictions on two grounds. First, he alleges that he received ineffective assistance of counsel in violation of the Sixth Amendment.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution).

1

Record Document 1-1, p. 8. Second, he argues that the State failed to disclose *Brady* material. *Id.* at 12. The Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the petition be denied and dismissed with prejudice. Record Document 15, p. 1. The Court adopted the R&R as to its dismissal of Petitioner's ineffective assistance of counsel claims and his claim that the State's failure to disclose the Background Event Chronology constituted a *Brady* violation. Record Document 20, p. 1. But the Court also found that the R&R did not address whether the State committed a *Brady* violation when it failed to disclose the 911 recording. *Id.* The Court ordered the parties to submit supplemental briefing on this issue. *Id.*

The factual background of this case is fully set forth in the R&R, so the Court will not repeat it here. *See* Record Document 15, pp. 2–8 (quoting *Seaton*,112 So. 3d at 1013–18). Relevant to this ruling, on the night of the rape, Kim Barnes ("Barnes"), the victim's mother, received text messages from K.W., the victim, stating that she had been raped, which prompted Barnes to call 911. Record Document 24, pp. 2–3. During this phone call, Barnes made two statements of interest to Petitioner: (1) that she did not know if K.W. was "just pulling [her] chain or if it really happened" and (2) that K.W. was "an eighteen-year-old drama queen." *Id.* at 2 & 5. Based on these statements, Petitioner claims that the State committed a *Brady* violation when it did not disclose the 911 recording before Petitioner was convicted. Record Document 21, pp. 4 & 21.

## LAW & ANALYSIS

### I. Applicable Law

In order to establish a *Brady* violation, the defendant must prove that "(1) the prosecution suppressed evidence, (2) it was favorable to the defendant, and (3) it was material." *United States v. Brown*, 650 F.3d 581, 587–88 (5th Cir. 2011). In determining materiality, the Court must consider whether "the favorable evidence could reasonably be taken to put the whole case in such a different

2

light as to undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The *Brady* rule does not require that the prosecutor disclose his entire file to defendant, but only the evidence favorable to the accused that, if suppressed, would deprive defendant of a fair trial. *Id.* at 675. This rule extends to impeachment evidence as well as exculpatory evidence. *United States v. Bolton*, 908 F.3d 75, 90 (5th Cir. 2018) (quoting *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018)).

## II. <u>Arguments Regarding the Timeline</u>

Petitioner argues that the State's failure to produce the 911 recording until after trial prevented him from impeaching K.W. and Barnes regarding the timeline of the case. Record Document 21, p. 4. Petitioner's main argument regarding the timeline appears to be that the 911 recording reveals that Barnes lied during her testimony about the times she received certain text messages. *Id.* at 10–11. The Court rejects Petitioner's argument on this point for the same reason it rejected Petitioner's argument that the State's withholding of the Background Event Chronology was a *Brady* violation. *See* Record Document 20, p. 1.

The R&R states that "[t]he lack of synchronicity as to time between various devices was thoroughly discussed at trial" and therefore held that the Background Event Chronology did not undermine confidence in the verdict and was therefore not *Brady* material. Record Document 15, p. 19; *see* Record Documents 9-5, pp. 89–92; 9-6, pp. 78–83. The same is true of the 911 recording. Furthermore, the phone records of K.W. and Barnes, which included text messages and phone calls,

3

were admitted into evidence. Record Document 9-6, p. 187. Therefore, any testimony given by Barnes or K.W. that was inconsistent with those phone records would have been apparent to all parties and the court during Petitioner's bench trial. As such, there is no reasonable probability that the 911 recording would have influenced the court's position regarding the timeline of events in this case. *Bagley*, 473 U.S. at 682.

### III. The 911 Recording as Impeachment Evidence

#### A. Arguments of the Parties

Petitioner argues that the State's failure to produce the 911 recording until after his conviction prevented him from impeaching K.W. as to her reasons for not returning to her hotel the night the rape took place, her communications with Barnes that night, and her reputation for truthfulness, "particularly in relation to charges of rape." Record Document 21, p. 12. Petitioner also claims that he was denied the opportunity to impeach Barnes regarding the timeline of that evening and K.W.'s reputation for truthfulness. *Id.* at 11. Petitioner asserts that his case rested on whether the trial court believed his testimony or K.W.'s testimony regarding their sexual encounter. *Id.* at 7–8. Thus, Petitioner claims that the trial court was entitled to hear "any and all evidence concerning known inconsistencies, unusual features, internal contradictions, and irreconcilable conflicts with physical evidence in K.W.'s story" and that "not even K.W.'s own mother found the claims of a known drama queen to be credible." *Id.* at 12.

In response, the State argues that the 911 recording fails to qualify as *Brady* evidence because (1) it is not favorable to Petitioner; (2) it is not material to guilt or punishment or for impeachment purposes; and (3) the recording is not sufficient to undermine confidence in the judge's verdict. Record Document 24, p. 2. The State claims that Barnes' reference to K.W. as a "drama queen" in the 911 recording is not favorable to Petitioner because "it does not carry a

4

connotation of untruthfulness, only excessive emotional displays or attention-seeking behavior." *Id.* at 6. The State also argues that Barnes could not have been questioned at trial about why she called K.W. a drama queen because that comment does not relate to K.W.'s general reputation for truthfulness or untruthfulness, which is the only type of reputation evidence allowed under the Louisiana Code of Evidence. *Id.* at 7. Finally, the State argues that Petitioner's request for relief should be denied because "[t]here is no reasonable probability that the 911 call would have produced a different verdict." *Id.* at 10.

**B.    Application**

    1.    <u>The 911 recording was not favorable to Petitioner</u>

In its brief, the State provides the Court with a text version of the 911 recording.[2] Record Document 24, pp. 2–6. After reviewing the entirety of the call, the Court finds that Petitioner's attempt to paint Barnes' comments as favorable to himself constitutes a misrepresentation of the content of the phone call and takes Barnes' comments completely out of context. During the call, Barnes states that K.W. sent her a text that said "mom, the cop raped me." *Id.* at 2. Barnes then states:

> I don't know if she's just pulling my chain or if it really happened. She's still not here back at the hotel, we couldn't find her, we waited over an hour . . . I don't know what's going on and I just want to report this because I don't know what to do.

*Id.* at 2–3. While explaining to the 911 operator the circumstances in which she last saw K.W., Barnes told the operator that K.W. was with her boyfriend, which prompted the following interaction:

> 911: Surely, yeah, but it's not adding up, though, surely the guy is not going to let an officer rape her and they're all hanging out together-

---

[2] Petitioner provided the Court with a copy of the 911 recording. Record Document 21-1. Upon the Court's review, the State has accurately relayed the content of the recording in its brief.

5

> Barnes: That's what I don't – I know – that's what I – believe me
>
> 911: That doesn't make any sense at all. There's just no possible, that would be strange, I mean, that means-
>
> Barnes: Let me tell you, he's got a knife on him, he put it in his shoe-
>
> 911: I know, but you're saying, and then, and then, you're saying an officer raped her-
>
> Barnes: No, I'm sure, I'm not sure that, I mean – this is an eighteen-year-old drama queen, yeah probably-

*Id.* at 4–5.

Barnes's reaction to K.W.'s text message must be read in context of the entire 911 recording. To begin, the degree to which these comments reflect any disbelief of K.W.'s request for help is severely undercut by the fact that Barnes took the request seriously enough to call 911. Furthermore, Barnes referred to K.W. as a drama queen only after the 911 operator questioned the validity of Barnes' report three times. *Id.* During the call, Barnes makes several efforts to obtain help for K.W., such as making sure the call was being recorded, asking for a police officer to take her to where K.W. was, and trying to call K.W. *Id.* at 4. Moreover, Barnes states repeatedly that she does not know what to do, highlighting the fact that Barnes was distressed and confused during the call. *Id.* at 2–6. In context, Barnes' comments appear to reflect that she was overwhelmed rather than suspicious of K.W.'s request for help. Because Barnes' comments do not reflect doubts as to K.W.'s credibility, the 911 recording was not favorable to Petitioner.

2. <u>The 911 recording was not material</u>

Even if the 911 recording constituted evidence clearly favorable to Petitioner, he has failed to demonstrate that it meets the *Bagley* standard of materiality. First, Petitioner would not have been able to use Barnes' statements in the 911 recording to impeach K.W. as to her own credibility

6

during cross-examination. The 911 recording constitutes inadmissible hearsay under the Louisiana Code of Evidence. La. C.E. arts. 801 & 802. Furthermore, although article 607(D)(2) allows a witness's credibility to be impeached using a prior inconsistent statement, there is no evidentiary rule that allows a witness to be impeached by another party's prior inconsistent statement. *Id.* at art. 607(D).

Second, any benefit Petitioner might have gained by impeaching Barnes as to K.W.'s credibility would have been minimal at best. Louisiana Code of Evidence article 608(A) provides that the credibility of a witness may be attacked by evidence in the form of general reputation only in reference to character for truthfulness or untruthfulness. *Id.* at art. 608(A)(1). In isolation, Barnes' statements that K.W. was "an eighteen-year-old drama queen" and wasn't sure whether K.W. was "just pulling [her] chain or if it really happened" could indicate that K.W. tended to exaggerate the truth. However, as noted above, when the statements are placed in context along with the rest of the 911 recording, their benefit to Petitioner is greatly reduced. Additionally, it is difficult to image that Petitioner would have been able to gain a favorable answer from Barnes by questioning her about her own daughter's character for truthfulness.

Finally, although Petitioner cites cases in support of his argument that the 911 recording is material, it does not rise to the same level of materiality as the evidence withheld in Petitioner's cited cases. In *State v. Kemp*, the Louisiana Supreme Court overturned the petitioner's conviction and sentence for second degree murder because of a *Brady* violation. 2000-2228 (La. 10/15/02); 828 So. 2d 540, 546. In that case, the State failed to timely disclose witness statements that would have supported the petitioner's claim that he shot the victim in self-defense. *Id.* In *State v. Lindsey*, the defendant relied on intoxication as his sole defense to the charge of second-degree murder. 2002-2363 (La. App. 4 Cir. 4/2/03); 844 So. 2d 961, 969. After his conviction, defendant discovered

the previously-undisclosed statements of two witnesses that contained exculpatory evidence essential to his intoxication defense and contradicted their trial testimony regarding his intoxication at the time of the murder. *Id.* at 963. The court found that the witnesses' statements were "clearly material in light of *Kemp*" and granted defendant's petition for post-conviction relief. *Id.* at 969.

Unlike the evidence at issue in *Kemp* and *Lindsey*, Barnes' comments in the 911 recording do not directly support a defense offered by Petitioner. *Kemp* and *Lindsey* both involved witness statements wherein the witnesses' direct accounts supported the defendants' version of events. In this case, Petitioner attempts to use Barnes' statements out of context in order to support a conclusion that she did not make herself, that K.W. was known to be untruthful and was not credible. Record Document 21, pp. 12–13. The Court finds that Barnes' off-hand comments, made in a high-stress situation, do not constitute material evidence that would have changed the result of Petitioner's trial if the 911 recording had been disclosed. *Bagley*, 473 U.S. at 682.

3. <u>The 911 recording was not material in the context of the entire record</u>

The materiality of an omitted piece of evidence must be evaluated in the context of the entire record. *United States v. Agurs*, 427 U.S. 97, 112 (1976). This is necessary because "[i]f there is no reasonable doubt about guilt whether or not the additional evi[dence] is considered, there is no justification for a new trial," whereas "additional evidence of relatively minor importance might be sufficient to create a reasonable doubt" if a verdict is already of questionable validity. *Id.* at 112–13. In this case, the record contains both testimonial and physical evidence corroborating K.W.'s version of events, aside from her own testimony and that of Barnes.

As to physical evidence, Melanie Hubbard ("Hubbard"), an expert in the field of sexual assault forensic examination, performed a sexual assault evaluation on K.W. that revealed four slits or lacerations at the bottom of K.W.'s vaginal opening. Record Document 9-5, p. 39. Hubbard

8

testified that these lacerations were outside of the norm and indicated rough intercourse, which could have occurred with or without consent. *Id.* at 40. The trial court also heard testimony from Jonathan Long ("Long"), a bail bondsman that encountered K.W. before the rape while she was attempting to bail her boyfriend out of jail following his arrest. Record Document 15, p. 3. Long testified that K.W. told him that Petitioner had driven her to the jail and was making unwanted sexual advances towards her. Record Document 9-4, pp. 171. Long stated that K.W. asked him for a ride and was "pretty upset and crying pretty deeply." *Id.* at 172. After Long refused to give K.W. a ride, Petitioner told K.W. that they were going to his office to use the phone and a nearby ATM. Record Document 15, p. 3.

Furthermore, Gerald Posey ("Posey"), a deputy and the Technical Resources Manager of the Caddo Parish Sheriff's Office, testified that the cameras at Government Plaza were operated by the Sheriff's office and that Petitioner was the only person with the City, other than the IT personnel, who was a "power user," that is, someone who could delete videos from the video index. Record Document 9-4, p. 235; *see Seaton*, 112 So. 3d at 1016. Posey also testified that five security videos from the evening of the crime had been deleted from the video index. Record Document 9-4, p. 239. These videos, later recovered, included footage of Petitioner and K.W. walking into and exiting Government Plaza through the parking garage. Record Document 9-5, p. 64. As the State points out, Petitioner would not need to delete video evidence if the sexual encounter between himself and K.W. was consensual. *See* Record Document 24, p. 7.

Based on the above, the Court agrees with the Louisiana Second Circuit Court of Appeals that that Petitioner's "attempts to portray the victim as a sinister person plotting his downfall" are not supported by the record. *Seaton*, 112 So. 3d at 1019–20. Because of the significant evidence in the record supporting K.W.'s version of events, the Court finds that the verdict in this case was not

of "questionable validity" and that there is no reasonable doubt about Petitioner's guilt, whether or not the 911 recording is considered. *Agurs*, 427 U.S. at 112–113. Therefore, the 911 recording, and any ability it may have given Petitioner to impeach the credibility of K.W. and Barnes, is not material in the context of the entire record. *Id.* at 112.

## IV. Officer Holloway's Report

Petitioner claims that the State's failure to timely disclose the 911 audio recording was compounded by another *Brady* violation: its failure to disclose the police report of Officer Matthew Holloway ("Officer Holloway"). Record Document 21, pp. 8–9. In this report, Officer Holloway states that when he arrived at Barnes' location in response to her 911 call, Barnes told him that K.W. had texted her to let her know that K.W.'s boyfriend had been arrested. Record Document 9-8, p. 151. Petitioner claims that this report contradicts K.W.'s testimony that she went with Petitioner initially because she did not want her family to learn that her boyfriend had been arrested. Record Document 21, p. 9. Petitioner does not provide the Court with a citation to K.W.'s testimony on this matter. Nevertheless, for the same reasons discussed above, the Court finds that this report is not sufficient to undermine confidence in the outcome of the trial court's ruling in the context of the entire record.

## CONCLUSION

For the reasons discussed above, the Court finds that the 911 recording was not material to Petitioner's guilt or punishment and would not have changed the outcome of the trial if it had been timely disclosed. *Bagley*, 473 U.S. at 682. Therefore, the 911 recording is not *Brady* material, and the instant petition [Record Document 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order

adverse to the applicant. A court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court has considered the record in this case and the standard set forth in § 2253. Although the Court denies the Petition for Writ of Habeas Corpus, the Court **GRANTS** Petitioner's motion for a certificate of appealability [Record Document 19] because the Petitioner has made a substantial showing of the denial of a constitutional right.

A judgment consistent with this ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 31st day of 2020. March,

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE